UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HEATHER L. FATZ,**

    **Plaintiff,**

v.                                                             Case No:  6:12-cv-1668-Orl-36DAB

**WINN-DIXIE STORES, INC.,**

    **Defendant.**

_____

**ORDER**

This cause comes before the Court upon Defendant Winn-Dixie Stores, Inc.'s ("Defendant") Motion to Dismiss With Prejudice Count I of Plaintiff Heather L. Fatz's ("Plaintiff") Complaint ("Motion to Dismiss") (Doc. 7).  Plaintiff filed a response in opposition to Defendant's Motion to Dismiss ("Response") (Doc. 10).  For the following reasons, Defendant's Motion to Dismiss will be denied.

**I.    BACKGROUND**

    **A.    Statement of Facts[1]**

In November 2003, Plaintiff was hired by Defendant to work as a cashier at Defendant's store in Casselberry, Florida.  Doc. 1, ¶¶ 6, 12.  She remained continuously employed there until her involuntary termination on December 10, 2010.  *Id*.  At the time of her termination, Plaintiff served as a floral manager, a position she had been promoted to in late 2004.  *Id.* at ¶ 13.

On June 14, 2010, Plaintiff began feeling ill and visited her physician, who recommended that she take bed rest for the remainder of the week.  *Id.* at ¶ 16.  Plaintiff informed her

---

[1] The following statement of facts is derived from Plaintiff's Verified Complaint ("Complaint") (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss.  *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992).

supervisor, store manager Tom Seay ("Seay"), of the physician's recommendation and gave him a physician's note. *Id.* at ¶ 17. Seay discouraged her from taking time off. *Id.* at ¶¶ 17–18. Over the next few months, Seay repeatedly threatened that she would lose her position if she took time off. *Id.* at ¶¶ 19–20. In July 2010, Plaintiff began efforts to obtain leave under the Family and Medical Leave Act ("FMLA") by reaching out to Defendant's corporate representatives. *Id.* at ¶¶ 21–33. On August 11, 2010, Defendant's Human Resources Manager, Gary Lloyd, suggested that Plaintiff take FMLA leave, which she did. *Id.* at ¶ 22.

In November 2010, while on leave, Plaintiff was diagnosed with fibromyalgia, and relayed this diagnosis to Seay and Defendant's corporate representatives. *Id.* at ¶ 34. On December 1, 2010, in an effort to return to her position, Plaintiff visited her physician and had paperwork completed to acknowledge a "serious health condition" of fibromyalgia and gastritis, which had been occurring "continuously" from August 18 through December 3, 2010, and for which she might require intermittent leave thereafter. *Id.* at ¶ 36. Plaintiff presented the paperwork to Seay and informed him of her medical status, expressing that she wanted to return to work with reasonable accommodations. *Id.* at ¶ 39. Seay informed Plaintiff that he did not care what forms she presented regarding her condition, and that he would "not be accommodating anything." *Id.* at ¶ 40. When Plaintiff asked when she could return to work, Seay stated that he "needed to talk to corporate." *Id.* at ¶ 41. Plaintiff and her physician also faxed the necessary paperwork to Defendant's corporate representatives and the insurance provider. *Id.* at ¶ 42–43.

After receiving no reply from Defendant regarding the faxed forms, Plaintiff called Defendant's corporate offices on December 10, 2010 to find out about her return date. *Id.* at ¶ 44. Plaintiff was informed that she had been terminated as of December 1, 2010. *Id.* Plaintiff

eventually learned that she was terminated automatically "for no hours worked" and for failing to apply for a leave of absence. *Id.* at ¶ 45.

On October 5, 2011, Plaintiff faxed a completed Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire (the "Intake Questionnaire") to both the EEOC and the Florida Commission on Human Relations (the "FCHR"). *Id.* at ¶ 7; *see* Doc. 1-1, pp. 1–9. In the Intake Questionnaire, she checked boxes and wrote narratives indicating that she believed that Defendant discriminated against her on the basis of her disability, and she described the allegedly discriminatory acts. *See* Doc. 1-1, pp. 5–9. At the end of the Intake Questionnaire were two boxes which requested guidance as to what the EEOC should do with the information provided by Plaintiff on the Intake Questionnaire. *See id.* at 8. Box 1 stated: "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." *Id*. Box 2 stated in part: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." *Id*. Plaintiff placed a mark next to Box 2 only. *Id*. The Privacy Act Statement at the end of the Intake Questionnaire provided that "this questionnaire may serve as a charge if it meets the elements of a charge." *Id*. Plaintiff's completed Intake Questionnaire was not accompanied by an oath or affirmation or made under penalty of perjury. *See id.* at 5–9. In the cover page of the fax to the EEOC, Plaintiff wrote: "Please file immediately. My 300 day time limit is tomorrow Oct. 6, I was informed yesterday when I called the 800 number and spoke with a representative from the EEOC."[2] *See* Doc. 1-1, p. 1.

---

[2] Under federal law, in "deferral states" such as Florida, a charge of employment discrimination must be filed with the EEOC within 300 days of the allegedly unlawful employment practice.

Plaintiff subsequently received a Form 5 Charge of Discrimination ("Charge of Discrimination") from the EEOC, which she completed and filed with both the EEOC and FCHR in early January 2012. Doc. 1, ¶ 8; *see* Doc. 1-1, p. 10. Plaintiff's completed Charge of Discrimination contained a statement that she "declare[d] under penalty of perjury that the above is true and correct," and she signed her name under this statement. *See* Doc. 1-1, p. 10. After receiving the Charge of Discrimination, the FCHR forwarded it to Defendant, which in turn submitted to the FCHR a response, dated January 18, 2012, denying Plaintiff's allegations of discrimination. *See* Doc. 10-1. On August 8, 2012, after more than 180 days since the date of filing of the Charge of Discrimination, the EEOC terminated its processing of Plaintiff's discrimination charge and issued her a Notice of Right to Sue ("Notice"). Doc. 1, ¶¶ 9–10; *see* Doc. 1-1, p. 11. Plaintiff received the Notice on August 10, 2012. Doc. 1, ¶ 10.

B. **Procedural History**

On November 6, 2012, Plaintiff filed her Complaint in this Court, asserting the following claims: (1) Count I – unlawful discrimination under the Americans with Disabilities Act ("ADA"); (2) Count II – unlawful interference under the FMLA; (3) Count III – unlawful retaliation under the FMLA. *See* Doc. 1. On December 3, 2012, Defendant filed the instant Motion to Dismiss, asking the Court to dismiss Count I with prejudice due to Plaintiff's alleged failure to timely exhaust her administrative remedies. *See* Doc. 7.

II. **STANDARD OF REVIEW**

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the

---

*Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1263–64 (11th Cir. 2001) (citing 42 U.S.C. § 2000e-5(e)(1)).

elements of a cause of action are not sufficient. *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions, too, are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*. Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

## III.  DISCUSSION

The only issue before the Court is whether Plaintiff timely filed a charge of disability discrimination with the EEOC. *See* Docs. 7, 10. "Timely filing a charge of discrimination is a prerequisite to bringing suit under both Title VII and the ADA." *Maynard*, 256 F.3d at 1262. "Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge." *Rizo v. Ala. Dep't of Human Res.*, 228 F. App'x 832, 835 (11th Cir. 2007). Plaintiff bears the burden of proving all conditions precedent to filing suit, including the condition that she timely filed with the EEOC. *Maynard*, 256 F.3d at 1262.

In "deferral states" such as Florida, a charge of employment discrimination must be filed with the EEOC within 300 days of the allegedly unlawful employment practice. *See supra*, n.2. It is undisputed that the date of the latest possible discriminatory act taken against Plaintiff by Defendant was December 10, 2010, as that was the date she was informed that she had been terminated. It is also undisputed that October 6, 2011 was the 300th day following the date she was informed of her termination, and that she submitted her Intake Questionnaire to the EEOC on October 5, 2011. However, Defendant argues that because Plaintiff's Intake Questionnaire

5

was not verified—*i.e.*, not accompanied by oath or affirmation or made under penalty of perjury—it cannot be considered a "charge" under federal law. *See* Doc. 7. Defendant further argues that because she did not file the Charge of Discrimination until January 2012—more than 300 days after the last possible discriminatory act—her ADA discrimination claim is barred for failure to timely exhaust her administrative remedies. *See id.* Plaintiff, on the other hand, argues that she timely submitted a charge to the EEOC, because her Intake Questionnaire qualifies as a charge, and her verified Charge of Discrimination should relate back to the date she submitted her unverified Intake Questionnaire. *See* Doc. 10. Therefore, the Court must decide whether the verification in the Charge of Discrimination may relate back to the date of the filing of the Intake Questionnaire, and, if so, whether her Intake Questionnaire qualifies as a charge.

Section 706 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5, governs the filing of charges of discrimination with the EEOC, including charges of disability discrimination under the ADA. *See* 42 U.S.C. § 12117(a) (incorporating by reference 42 U.S.C. § 2000e–5). Section 706(b) mandates that charges "shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5. EEOC regulations promulgated under the statute provide that a "charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. "To be verified, a charge must be 'sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury.' " *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (quoting 29 C.F.R. § 1601.3). It is undisputed that, under this definition, Plaintiff's Intake Questionnaire was unverified, as it was not accompanied by oath or affirmation and was not made under oath. *See* Doc. 1-1, pp. 5–9. It is also undisputed that her

Charge of Discrimination was verified, as she signed a statement providing that she "declare[d] under penalty of perjury that the above is true and correct." *See* Doc. 1-1, p. 10; *see Wilkerson*, 270 F.3d at 1317 (finding that similar language plainly met the verification requirements of Title VII and EEOC regulations).

Although Section 706 requires a charge to be verified and in writing, it does not define the term "charge." *See* 42 U.S.C. § 2000e–5; *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112 (2002). However, EEOC regulations do establish certain requirements of charges. For example, the regulations state that a charge "should contain" the following five pieces of information: (1) the name, address, and telephone number of the person making the charge; (2) the name and address of the charged entity; (3) a statement of facts describing the alleged discriminatory act; (4) the number of employees of the charged employer; and (5) a statement indicating whether the charging party has initiated state proceedings. 29 C.F.R. § 1601.12(a). "However, even if a charge does not contain the suggested information, the EEOC will deem a charge minimally sufficient when it receives from the charging party 'a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' " *Wilkerson*, 270 F.3d at 1318 (quoting 29 C.F.R. § 1601.12(b)). Therefore, the regulations provide two alternative methods of meeting the requirements of a charge: (1) providing the five pieces of suggested information in § 1601.12(a); or (2) providing the "minimally sufficient" information in § 1601.12(b). *See Wilkerson*, 270 F.3d at 1318–19. Moreover, EEOC regulations provide that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to

or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).

In *Edelman*, the Supreme Court addressed the impact of the EEOC's relation-back regulation on the time limit to file a discrimination charge. *See Edelman*, 535 U.S. at 109. The plaintiff, a college professor, had faxed an *unverified* letter to the EEOC claiming that his employer discriminated against him on the basis of gender, national origin, and religion in violation of Title VII by denying him tenure. *Id*. The letter was faxed within the 300-day period to file a charge following his denial of tenure. *Id*. Thereafter, but outside the 300-day time limit, the plaintiff completed and submitted to the EEOC a *verified* Charge of Discrimination, which the EEOC then forwarded to his employer for a response. *Id.* at 109–10. The plaintiff subsequently sued the employer, asserting a discrimination claim under Title VII. *Id.* at 110. The employer moved to dismiss for failure to timely exhaust administrative remedies, challenging the validity of the EEOC's relation-back regulation and arguing that Section 706 required a charge to be verified *within the limitations period*. *Id*. The Supreme Court rejected the argument that a charge must be verified within the limitations period, and upheld the EEOC regulation permitting relation-back of a verification omitted from an original filing. *Id.* at 112–19. The Court reasoned:

> The point of the time limitation is to encourage a potential charging party to raise a discrimination claim before it gets stale, for the sake of a reliable result and a speedy end to any illegal practice that proves out. The verification requirement has the different object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury. This object, however, demands an oath *only by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC*.

8

*Id.* at 112–13 (emphasis added).[3] The Court also recognized that most discrimination charges are filed by laypersons, rather than lawyers, and that permitting relation-back "ensures that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently. At the same time, the EEOC looks out for the employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied." *Id.* at 115. Thus, the Supreme Court made clear that a charge does not have to be verified *at the time of filing*, only that it must be verified by the time the employer is required to respond to the charge.[4]

Based on the Supreme Court's holding in *Edelman*, an unverified filing which is filed within the statutory time limit, and otherwise meets the requirements of a charge, can, in fact, be considered a charge under Section 706 if it is supplemented by a subsequent verification that is filed before the employer is required to respond to the charge. *See Wilson v. Sprint/United Mgmt. Co.*, No. 6:10-cv-1663, 2011 WL 2670184, at *5 (M.D. Fla. July 8, 2011) (discussing *Edelman*'s holding that "a charge and a verification do not necessarily have to be completed at the same time. However, the oath must be submitted prior to the EEOC requesting the employer to respond to the charge."). Applying *Edelman* to the facts here, it is clear that the EEOC's relation-back regulation permits Plaintiff's filing of the verified Charge of Discrimination in

---

[3] The employer generally must be served with notice of a charge within ten days of the complainant's filing with the EEOC. *See* 42 U.S.C.A. §§ 2000e-5(b), 2000e-5(e)(1); 29 C.F.R. § 1601.14(a).

[4] The *Edelman* Court also rejected the employer's argument that the EEOC's relation-back regulation allowed employers to be subject to discrimination charges for indeterminate periods of time. *Id.* at 115 n.9. The *Edelman* Court did not establish a time limit for how long a complainant has to correct an unverified filing by subsequent verification. *Id*. However, in *Edelman*, the time period between the plaintiff's submission of his unverified letter and his subsequent filing of the verified Charge of Discrimination was approximately five months, *see id.* at 109–10, which is two months longer than the three-month period between Plaintiff's submission of the unverified Intake Questionnaire and her subsequent filing of the verified Charge of Discrimination.

early January 2012 to relate back to her submission of the unverified Intake Questionnaire on October 5, 2011, so long as her Intake Questionnaire otherwise meets the requirements of a charge. This is because Plaintiff's verified Charge of Discrimination was filed in early January 2012, and Defendant was not required to respond to her allegations until receiving a copy of the Charge of Discrimination later that month.

While the EEOC's relation-back regulation permits Plaintiff's verified Charge of Discrimination to relate back to her unverified Intake Questionnaire, the issue remains of whether her Intake Questionnaire otherwise meets the requirements of a charge. *See Edelman*, 535 U.S. at 118–19 (remanding the case for a determination as to whether the plaintiff's letter to the EEOC otherwise met the requirements of a charge). The Eleventh Circuit has held that "as a general matter an intake questionnaire is not intended to function as a charge." *Pijnenburg v. W. Ga. Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001). However, the Eleventh Circuit has also held that, under certain circumstances, an intake questionnaire can indeed be considered a charge for purposes of the statute of limitations. *See Wilkerson*, 270 F.3d at 1321; *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1239–41 (11th Cir. 1989).

In *Wilkerson*, the plaintiff completed and submitted to the EEOC a verified intake questionnaire four days after she was terminated by her employer. 270 F.3d at 1316. In the intake questionnaire, she provided contact information for her and the employer, and responded to questions and provided detailed narratives in which she alleged race and sex discrimination by the employer. *Id*. The EEOC did not initially act on the questionnaire, but the plaintiff called the EEOC the next month, and then again approximately ten months later, at which time the EEOC decided to send her former employer a Notice of Charge of Discrimination. *Id*. After the plaintiff brought a Title VII discrimination action in federal court, the employer moved to

dismiss, arguing that the intake questionnaire did not constitute a charge and, therefore, there had been no timely charge. *Id.* at 1317–18.

The *Wilkerson* Court first recognized that 29 C.F.R. § 1601.12(a) stated that charges "should contain" certain information, and that, even when a charge did not contain the suggested information, the EEOC would deem a charge minimally sufficient when it received from the charging party " 'a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' " *Id.* at 1318 (quoting 29 C.F.R. § 1601.12(b)). The Court held that a verified intake questionnaire that met either of these requirements could constitute a charge for purposes of the Title VII statute of limitations "when the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC." *Id.* at 1321. The Court reasoned that this test requires that a charging party clearly indicate that she wishes to activate the administrative process, and also "ensures that, once a charging party's intent is made clear, the EEOC's inaction will not vitiate her claim." *Id.* at 1319–20. The Court identified three non-exclusive factors to examine under the "manifest intent" test: (1) what the complainant and the EEOC said to each other; (2) what the questionnaire form itself indicated; and (3) how the EEOC responded to the completed questionnaire. *Id.* at 1320. Applying the test to the facts before it, the Court found that: first, the plaintiff had contacted the EEOC multiple times regarding her charge and received misleading information; second, the questionnaire form itself stated that it could be a charge; and third, after some prodding by the plaintiff, the EEOC treated her questionnaire as a charge and issued a belated notice of charge to the employer. *Id.* at 1320–21. Therefore, the Court found that a reasonable person would believe that the plaintiff manifested her intent to activate the administrative process by filing the questionnaire with the

EEOC. *Id.* at 1322. Accordingly, the Court recognized her filing of the questionnaire as a timely charge. *Id.*

After the Eleventh Circuit's decision in *Wilkerson*, the Supreme Court in *Holowecki* clarified the standard to be used in determining what constitutes a charge, although under another statute, the Age Discrimination in Employment Act ("ADEA"). *Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008). The Court held that a filing may be deemed a charge if it provides "the information required by the regulations, *i.e.*, an allegation and the name of the charged party," and if it could be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402. The Court also determined that neither the complainant's postfiling conduct nor the EEOC's failure to act upon a filing should negate a proper charge. *Id.* at 403–04, 406. The only relevant inquiry is whether the filing should be reasonably interpreted as a request for agency action. *Id.* at 406. In so ruling, the Court reasoned:

> Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies. Construing ambiguities against the drafter may be the more efficient rule to encourage precise expression in other contexts; here, however, the rule would undermine the remedial scheme Congress adopted. It would encourage individuals to avoid filing errors by retaining counsel, increasing both the cost and likelihood of litigation.

*Id.*

However, the Court was careful to point out that it was deciding what constitutes a charge under the ADEA only, and that the rules applicable to the ADEA differed from those under Title

12

VII and the ADA.[5] *Id.* at 393. Nevertheless, in resolving a split among the Courts of Appeals as to what constitutes a charge, the *Holowecki* Court cited the Eleventh Circuit's decision in *Wilkerson*, which involved claims under Title VII, as an example of the "manifest intent" approach for deciding whether a filing constitutes a charge. *Id.* at 402. The Supreme Court observed that, to the extent the "manifest intent" test required examination of a filing from the standpoint of an objective observer—rather than the filer's subjective intent—in determining whether the filing was a request for administrative action, such a test was consistent with the *Holowecki* test. *Id.*

After *Holowecki*, it is not entirely clear whether the Supreme Court's test as to what constitutes a charge under the ADEA governs charges under the ADA. In *EEOC v. Summer Classics, Inc.*, a case involving a charge under the ADA, the Eleventh Circuit noted the Supreme Court's warning in *Holowecki* that "rules applicable to one statute should not be applied to another 'without careful and critical examination.' " 471 F. App'x 868, 871 (11th Cir. 2012) (quoting *Holowecki*, 552 U.S. at 393). However, the *Summer Classics* Court continued: "Even assuming *Holowecki* is applicable to a charge under the ADA, the EEOC fails to demonstrate that [the complainant's] intake questionnaire is a sufficient filing." *Id.* at 871. The Court found that the meager contents in the complainant's intake questionnaire, such as statements that his employer's actions were "discrimination" and a "crime" and that he was "looking for counsel," did not indicate to an objectively reasonable reader that he intended to activate the "machinery and remedial processes" of the EEOC. *Id.* at 872. In other cases, though, the Eleventh Circuit has continued to apply *Wilkerson*. *See Francois v. Miami Dade County, Port of Miami*, 432 F.

---

[5] Notably, as Chief Judge Conway of the Middle District of Florida has observed, the EEOC rules governing ADEA claims do not contain a verification requirement. *See Wilson*, 2011 WL 2670184, at *4 n.8.

13

App'x 819, 822 (11th Cir. 2011) (holding that the plaintiff's intake questionnaire did not constitute a charge where it was not verified, the form language did not indicate that it would be considered a charge, and the plaintiff had filed an actual timely charge). Indeed, the Supreme Court indicated that *Wilkerson*'s "manifest intent" approach may be entirely consistent with the *Holowecki* test. *See Holowecki*, 552 U.S. at 402.

In any event, whether the *Wilkerson* test continues to apply to ADA claims is not dispositive here, as the Court finds that Plaintiff's Intake Questionnaire constitutes a charge under both *Holowecki* and *Wilkerson*. Under *Wilkerson*, an intake questionnaire can be considered a charge for purposes of the statute of limitations where: (1) the questionnaire is verified; (2) the questionnaire contains the information required by EEOC regulations; and (3) when the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC. *Wilkerson*, 270 F.3d at 1320–21; *see also Francois*, 432 F. App'x at 822. The Court has already determined that Plaintiff's Intake Questionnaire was verified due to the relation back of her verified Charge of Discrimination, which is permissible under the Supreme Court's decision in *Edelman* and 29 C.F.R. § 1601.12(b). *See supra*. Her Intake Questionnaire also contains both the five suggested pieces of information listed in 29 C.F.R. § 1601.12(a), and the information which is deemed "minimally sufficient" to constitute a charge under 29 C.F.R. § 1601.12(b). As to § 1601.12(a), her Intake Questionnaire: (1) lists her name, address, and telephone number; (2) lists her employer's name and address; (3) provides, in several places, a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices; (4) indicates the employer's approximate number of employees; and (5) indicates that she has commenced related proceedings with the U.S. Department of

Labor, but not with any state or local agencies. *See* Doc. 1-1, pp. 5–9. As to § 1601.12(b), her Intake Questionnaire provides far more than the minimal information needed to identify the parties and to describe generally the actions complained of. *See* Doc. 1-1, pp. 5–9.

Thus, the only remaining issue under *Wilkerson* is whether the circumstances would convince a reasonable person that Plaintiff manifested her intent to activate the administrative process by filing the Intake Questionnaire with the EEOC. The Court finds this undoubtedly to be the case. For one, in the fax cover page to the Intake Questionnaire which she sent to the EEOC, Plaintiff wrote: "Please file immediately. My 300 day time limit is tomorrow Oct. 6, I was informed yesterday when I called the 800 number and spoke with a representative from the EEOC." *See id.* at 1. This message indicates that, based on a conversation she had with an EEOC representative, Plaintiff had a clear understanding that she was required to file a charge by the next day, or that her time to file under the statute of limitations would expire. This demonstrated urgency to file a charge is an obvious attempt to activate the EEOC's administrative machinery. Second, the Privacy Act Statement at the end of the Intake Questionnaire provided that "[c]onsistent with 29 CFR 1601.12(b) . . . this questionnaire may serve as a charge if it meets the elements of a charge." *See id.* at 8. Thus, a reasonable person could easily accept that Plaintiff's Intake Questionnaire was a charge. *See Wilson*, 2011 WL 2670184, at *6 (finding that identical language in an intake questionnaire was a factor indicating that the questionnaire could be reasonably interpreted as a charge); *compare Holowecki*, 552 U.S. at 405 (where intake questionnaire suggested that its purpose was to facilitate "*pre-charge* filing counseling" and to enable the EEOC to determine whether it had jurisdiction over "*potential* charges," the questionnaire did not give rise to an inference that the employee

15

requested agency action); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1241 (11th Cir. 2004) (same).

Third, Plaintiff checked Box 2 on the last page of the Intake Questionnaire, which stated in relevant part: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." *See* Doc. 1-1, p. 8. In so doing, she passed over Box 1, which stated: "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." *Id*. Again, a reasonable person could clearly view this as an attempt to activate the administrative process. *See Hammond v. Georgia*, No. 2-11-cv-51, 2012 U.S. Dist. LEXIS 7318, at *8–9 (N.D. Ga. Jan. 23, 2012) (finding that the plaintiff's decision to check the same box would lead a reasonable person to conclude that the plaintiff intended to activate the administrative process). Finally, after submitting the Intake Questionnaire, Plaintiff did not file a subsequent timely charge, which, under Eleventh Circuit precedent, would have weighed against the Intake Questionnaire constituting a charge. *See Bost*, 372 F.3d at 1241 (finding that the fact the plaintiff filed an actual timely charge suggested he did not intend his previously-submitted intake questionnaire to function as a charge); *Francois*, 432 F. App'x at 822 (same). Rather, Plaintiff's Charge of Discrimination was filed outside the 300-day statute of limitations, and it served to relate back to provide the verification omitted from her Intake Questionnaire. Given these considerations, a reasonable person could easily believe that Plaintiff manifested her intent to activate the administrative process by filing her Intake Questionnaire with the EEOC. As such, her Intake Questionnaire constitutes a charge under *Wilkerson*.

For the same reasons that Plaintiff's Intake Questionnaire constitutes a charge under *Wilkerson*, it also constitutes a charge under *Holowecki*. Her Intake Questionnaire provides the information required under both 29 C.F.R. § 1601.12(a) and 29 C.F.R. § 1601.12(b), and it is verified as required by 29 C.F.R. § 1601.9 due to the relation back of her subsequent Charge of Discrimination. *See supra*. Moreover, her Intake Questionnaire can be reasonably construed as a request for the EEOC to take remedial action to protect her rights. *See supra*. In addition, her subsequent filing of the Charge of Discrimination is irrelevant to a determination of whether the Intake Questionnaire itself was a charge, as "[p]ostfiling conduct does not nullify an earlier, proper charge." *Holowecki*, 552 U.S. at 406. Equally irrelevant is the EEOC's inaction after her filing of the Intake Questionnaire. *Id*. at 403–04. "What matters . . . is whether the [Intake Questionnaire] should be interpreted as a request for the agency to act." *Id.* at 406. Plaintiff's Intake Questionnaire is unquestionably a charge under this standard.

The cases cited by Defendant in support of its argument that Plaintiff's Intake Questionnaire did not constitute a proper charge are distinguishable. In *Pijnenburg*, decided before the Supreme Court's decision in *Edelman*, the Eleventh Circuit did not reach the question of whether a subsequent verification could relate back to the original filing, because it found that the intake questionnaire at issue did not meet the requirements for a validly filed charge. 255 F.3d at 1307. By contrast, this Court has held that Plaintiff's Intake Questionnaire *did* meet all the requirements of a charge. *See supra*. Moreover, in *Lara v. Raytheon Technical Service Co., LLC*, the plaintiff's letter to the EEOC alleging discrimination was never verified, either at the time of filing or subsequently by relation back. 476 F. App'x 218, 220 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1265 (2013). Here, Plaintiff's Intake Questionnaire was verified by the relation back of her Charge of Discrimination.

17

In *Wilson*, another case cited by Defendant, the court held that the plaintiff's intake questionnaire was not a charge because of two key differences from the intake questionnaire in *Wilkerson*: there was language in the questionnaire indicating that it was not a charge and, more importantly, the questionnaire was not verified. 2011 WL 2670184, at *6. In fact, the court noted that, under *Edelman*, the plaintiff might have been allowed to subsequently amend the questionnaire to provide a verification, since the EEOC had not yet requested a response from the employer. *Id.* at *7. However, since the federal court complaint did not allege that the plaintiff attempted to amend the intake questionnaire, the court found that the plaintiff could no longer cure the verification deficiency. *Id.* Here, unlike *Wilson*, the Court has found that the language in Plaintiff's Intake Questionnaire indicates to a reasonable reader that it is a request for agency action, and that her verified Charge of Discrimination relates back to the filing of the Intake Questionnaire since the EEOC had not yet requested a response. *See supra*.

Finally, *Hammond*, a case decided in the Northern District of Georgia, held that the plaintiff's intake questionnaire was not a charge because it was not verified. 2012 U.S. Dist. LEXIS 7318, at *9. It is unclear from the opinion whether the plaintiff argued that she had amended the questionnaire through subsequent verification. However, to the extent that *Hammond* stands for the proposition that a timely, unverified intake questionnaire cannot be amended through a subsequent verification, the Court declines to follow it, as it is in tension with *Edelman*'s holding that the EEOC's relation-back regulation allows for subsequent verification outside the time limit in the statute of limitations.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff timely exhausted her administrative remedies and, therefore, properly stated a claim for discrimination under the ADA. Accordingly, the Court will deny Defendant's Motion to Dismiss.

Accordingly it is hereby **ORDERED**:

1. Defendant Winn-Dixie Stores, Inc.'s Motion to Dismiss With Prejudice Count I of Plaintiff's Complaint (Doc. 7) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on August 13, 2013.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties